GILLISPIE et ux. v. GRAY. (No. 9079.)

(Court of Civil Appeals of Texas. Ft. Worth. April 12, 1919. On Motion for Rehearing, June 7, 1919. Further Rehearing Denied June 28, 1919.)

1. LIMITATION OF ACTIONS ⚖══96(2), 100(1)—
STATUTE OF LIMITATIONS — INITIATION OF
PERIOD—FRAUD AND MUTUAL MISTAKE.

In suits for relief against fraud and deceit, the statute of limitation does not begin to run until complainant discovers the fraud, or has learned facts sufficient to put a person of ordinary prudence on inquiry, which, if pursued, would have led to a discovery of the fraud; and the rule applies when a suit is predicated on mutual mistake.

2. LIMITATION OF ACTIONS ⚖══180(2), 199(2)—
STATUTE OF LIMITATIONS—MISTAKE—NEGLI-
GENCE IN FAILURE TO DISCOVER.

Petition of purchaser of land for shortage in acreage held not to show on its face that the purchaser was guilty of negligence as a matter of law in failing to discover the shortage before the day when possession was delivered to him, so that it was a question for the jury whether the purchaser was guilty of negligence barring his suit by limitation.

3. LIMITATION OF ACTIONS ⚖══39(2) — FOUR
YEARS STATUTE — PURCHASER'S SUIT FOR
SHORTAGE.

The four-years statute of limitation (Rev. St. 1911, art. 5690), and not the two-years stat-

ute, is applicable to a suit for shortage in acreage by the purchaser of land.

4. VENDOR AND PURCHASER ⚖══349—SALE BY
ACRE—PETITION FOR SHORTAGE.

Petition of the purchaser of land, suing for a shortage in acreage, held to show that the sale was by the acre and not in bulk.

5. VENDOR AND PURCHASER ⚖══345—RIGHT TO
BARGAIN—SHORTAGE THROUGH MISTAKE.

The purchaser of land by the acre, who, on account of mutual mistake, received a smaller number of acres than he bargained for, was entitled to the benefit of his bargain, and could recover damages for the shortage, despite the seller's offer, after the shortage had been discovered, to return the whole consideration for a reconveyance of all the land.

6. HUSBAND AND WIFE ⚖══239—SHORTAGE IN
ACREAGE—JUDGMENT AGAINST WIFE.

In suit to recover for a shortage in land purchased by the acre, in the absence of allegation that the property was the separate property of a defendant, the wife of the other defendant, and allegation showing that any of the proceeds of the sale became her separate estate, and in the absence of proof of such facts, personal judgment for plaintiff purchaser against defendant wife was improper.

On Motion for Rehearing.

7. VENDOR AND PURCHASER ⚖══351(6)—SHORT-
AGE IN ACREAGE—DAMAGES.

Where land is sold by the acre, and through mutual mistake there is a shortage in the acreage, the measure of the purchaser's damages is the difference between the price paid by him and the value of what he actually received as of the date of the sale, with interest.

8. VENDOR AND PURCHASER ⚖══349—SUIT FOR
SHORTAGE — PLEADING — EVIDENCE AS TO
DAMAGES.

Where count in petition seeking recovery on allegation of mutual mistake of parties to a sale of land in supposing the tract sold to contain 128 instead of 114 acres did not allege the value of the 14 acres of shortage, testimony with respect to its value was not available to plaintiff purchaser for recovery of such value as the measure of his damages.

9. APPEAL AND ERROR ⚖══1169(3)—DEFECT IN
PLEADING—REVERSAL.

Where petition for shortage in acreage of land sold by the acre did not allege the value of the 14 acres shortage, and the trial court adopted rule that value of shortage was the measure of damages, the case will be reversed on defendant seller's appeal, though the correct rule for measuring the purchaser's damage has not been invoked by him.

Appeal from District Court, Bosque County; O. L. Lockett, Judge.

Action by H. Gray against Thomas L. Gillispie and wife. From judgment for plaintiff, defendants appeal. Reversed, and cause remanded.

James M. Robertson, of Meridian, for appellants.

H. J. Cureton, of Meridian, for appellee.

DUNKLIN, J. Thomas L. Gillispie and wife have appealed from a judgment rendered against them in favor of H. Gray for the sum of $1,400, which was alleged to be the purchase price paid by Gray to the defendants, Gillispie and wife, for 14 acres of land sold by the defendants to Gray, and to which the defendants owned no title.

In his petition plaintiff alleged that he purchased from the defendants a tract of 128 acres at the agreed price of $100 per acre, but that he later discovered by actual survey of the land that the tract contained only 114 acres, and his suit was to recover the purchase price paid to the defendants for that shortage. There were two counts in the petition, in the first of which it was alleged that the trade for 128 acres instead of 114 acres was the result of a mutual mistake of the parties. In the second count of the petition a recovery was sought upon the theory of a breach of warranty of title to the 14-acre shortage; but both in the trial court and here that theory of recovery was abandoned, leaving the first count in the petition as the only basis for the relief prayed for by plaintiff.

By several special exceptions the defendants invoked the statutes of limitation of two and four years, and several assignments are presented to the action of the court in overruling those exceptions.

According to allegations in his petition, plaintiff purchased the land on August 18, 1913, for a total consideration of $12,800, $1,000 of which was paid cash, and the balance was in deferred payments. The first payment made on the deferred installments was in the sum of $1,000, which was paid more than 12 months after the date of the deed. According to further allegations in the petition, the purchase and sale was upon the basis of $100 per acre, and defendants represented to him that the tract contained 128 acres, which representations plaintiff believed, and relied upon and was induced thereby to consummate the trade. Possession of the tract was not delivered to him until January 1, 1914. After taking possession of the land he continued to believe that the tract contained 128 acres until August, 1917, when he caused a survey to be made which developed the shortage of 14 acres. He was caused to make such a survey by reason of the fact that correct field notes were required by the Federal Farm Loan Bank, to which plaintiff had applied for a loan to pay off the outstanding indebtedness against the land. The field notes of the tract as given in the deed included 128 acres, but the inclosure included only 114 acres. At the time of the trade it was supposed that defendant's fences were on the true boundary lines as shown in the field notes, but upon actual survey it was found that one of the boundary lines diverged from the fence line and left a strip in a V shape between the fence and the ·boundary line which so diverged, containing 14 acres, and defendants had lost title to that to the owners of an adjoining tract who had acquired title by limitation, and defendants did not own the same at the time of their sale to the plaintiff. As noted above the deed to plaintiff was executed August 18, 1913, but plaintiff did not discover the shortage until August, 1917, and this suit was not instituted until November 2, 1917, more than four years after the deed was executed.

[1] The rule seems to be well settled that in suits for relief against fraud and deceit the statute of limitation does not begin to run until the complainant discovers the fraud, or has learned facts sufficient to put a person of ordinary prudence on inquiry which, if pursued, would have led to a discovery of the fraud; and the same rule is applicable when a suit is predicated upon mutual mistake between the parties. Oldham v. Medearis, 90 Tex. 508, 39 S. W. 919; Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970.

[2] The first question, then, is whether or not the allegations contained in plaintiff's petition showed on their face that plaintiff was guilty of negligence, as a matter of law, in failing to discover the shortage prior to January 1, 1914, when possession was delivered to him, and we have reached the conclusion that that question should be answered in the negative.

In the petition plaintiff alleged that at the time of the purchase he lived some 15 or 20 miles distant from the land and was unacquainted with it; that he was a farmer of little experience in buying and selling land; that the defendant Thomas L. Gillispie, with whom he negotiated the trade, was a business man of high standing, with long experience in buying and selling lands, and plaintiff, having the utmost confidence in his business integrity, relied implicitly upon his assurance that the tract being sold contained 128 acres; that the plaintiff before buying observed the boundaries of the tract as the same were inclosed, and in good faith believed that the inclosure included an area of 128 acres, and had no reason to doubt that fact until he had the survey made, noted above. He further alleged that during the first negotiations defendant Thomas L. Gillispie claimed that the tract contained 127 acres, and that the sale was then agreed to on a basis of 127 acres at $100 per acre, but that later in preparing the deed the defendant discovered that according to the field notes of the tract it contained 128 acres, and thereupon plaintiff agreed to pay for 128 acres at the price of $100 per acre. It was alleged that this was an additional circumstance which caused plaintiff to rely upon

the representation made by the defendant Thomas L. Gillispie that the tract did in fact contain 128 acres.

In the case of Bass v. James, 83 Tex. 110, 18 S. W. '336, which was a suit based upon fraud and deceit in the sale of a tract of land in which plaintiff sought to recover for the value of the deficit of quantity of the land sold, our Supreme Court held that the suit was barred by the statute of two years' limitation. In that case the sale was made in October, 1887, and the suit was instituted in October, 1890. According to the allegations in the petition in that suit the defendant had practiced a fraud upon him in representing that the tract sold contained 135 acres when, in fact, it contained 14.1 acres less than that area, for the value of which a recovery was sought. But the petition contained no allegation that after the consummation of the sale the defendant made any representations or did any act to induce the plaintiff to continue in the belief that that tract contained the area represented. And in view of that fact it was held that plaintiff was guilty of negligence, as a matter of law, in failing sooner to discover the fraud, and that the statute of limitation of two years barred the action. The facts of that case were very similar to those of Kuhlman v. Baker, 50 Tex. 636, in which there was a like holding, and which case, together with others, is cited with approval in the case of Bass v. James. See, also, Stanford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449. In each of those cases it seems that the only excuse offered by the plaintiff for failure to sooner discover the shortage in the tract sold was that, he relied with implicit confidence upon the honesty and integrity of the defendant with respect to the representations made concerning the area of the tract sold.

But in the case of Isaacks v. Wright, supra, the facts were very similar to those in the decisions noted above, and it was held that the court could not declare, as a matter of law, that the plaintiff was guilty of negligence in failing sooner to discover the fraud practiced upon him in the sale of the land, which caused him to pay for an excess in acreage, and that therefore the suit was not barred by the statute of limitation. That suit was instituted more than four years after the perpetration of the fraud, which was not discovered until two and one-half years after it was perpetrated, and the decision of the case was that the judgment overruling the plea of the four-years statute of limitation, urged by the defendant, should be affirmed. In that case the decisions noted above were expressly discussed, and the similarity of the facts was noted. But it was further noted that in the case under discussion there was a difference by reason of the fact that at the time of the purchase defendant's agent pointed out the exact boundary lines of the land sold, and represented that the tract within those boundaries contained the entire acreage which plaintiff had purchased, which representation was untrue. So in the present suit we think there is also a distinguishing fact, in that plaintiff was not put in possession of the tract of land in controversy until January 1, 1914. To say the least, it cannot be said, as a matter of law, that plaintiff, who, up to that date it seems lived some 15 or 20 miles distant, was guilty of negligence in failing to discover the shortage in the acreage of the tract which he had purchased during the preceding summer, and of which he had never taken possession. Under such circumstances, and in view of the preceding negotiations between the parties, related above, we think that it was a question for the jury to determine whether the plaintiff was guilty of negligence in failing to discover the mistake alleged prior to January 1, 1914, that date being less than four years prior to the date the suit was instituted.

A writ of error was denied by our Supreme Court in Isaacks v. Wright, supra, and in that decision the following was cited with approval from 25 Cyc. 1197, with reference to the rule that in cases of mistake the statute begins to run from the time the mistake is discovered:

"The rule does not, however, dispense with the necessity of diligence on the part of the complainant where the means of discovery are at hand, and in such cases the statute runs from the time when he acquires such knowledge as would put an ordinarily intelligent person on inquiry which, if pursued, would lead to the discovery of the mistake, or briefly, from the time when, by the exercise of reasonable diligence, the mistake might have been discovered. But in order for the rule just stated to apply there must be circumstances to excite plaintiff's suspicion or charge him with notice of the mistake; and no duty to make inquiry arises where defendant has so conducted himself, to plaintiff's knowledge, as to lull him into a sense of security, and justify him in believing that no mistake has been made."

We are of the opinion that the announcement is a correct statement of the rule applicable in such cases, and we think it was approved by the Supreme Court as such by the denial of the writ of error in the Isaacks Case. See, also, Barton v. Cox, 176 S. W. 793.

[3] We are of the opinion further, that the four-years statute of limitation is applicable in the present suit, and not the two-years statute. In Blount v. Bleker, 13 Tex. Civ. App. 227, 35 S. W. 863, the Court of Civil Appeals, through Justice Williams, who afterwards was on the Supreme Bench, held that the four-years statute of limitation is applicable in such a suit as the present one. In the opinion in that case the decision in Bass v. James, supra, was referred to as holding that the two-years statute of limitation was applicable to such a suit. But it was further pointed out that Bass v. James followed the deci-

sion in Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109, and that in the latter case the two-years statute of limitation was held applicable because at that time there was no statute of limitation expressly applicable to such a suit, which would be a suit in equity, and that the two-years statute applicable in a suit for legal relief, as distinguished from equitable relief, would be followed.

It was further noted that, since the decision in Smith v. Fly, article 3207 of the Sayles' Revised Statutes 1888, which is now article 5690, had been enacted, which is a statute of four-years limitation, and is made applicable to all other actions in which no limitation is otherwise prescribed. And it was held that since the enactment of that statute suits of this character are governed by that statute. To the same effect is Holland v. Ashley, 158 S. W. 1033, by the Court of Civil Appeals of the Sixth District.

[4] We are of the opinion, further, that according to the allegations in plaintiff's petition the sale was by the acre and not in bulk, and that the court did not err in overruling the defendant's special exception to plaintiff's petition based upon the proposition that the same showed that the sale was not by the acre but in bulk.

We are of the opinion, further, that there was no error in overruling another special exception addressed to the petition on the ground that the same failed to show any equitable reasons for the relief prayed for.

The amount paid by plaintiff for the 14 acres in controversy was the correct measure of his damages. Moore v. Hazelwood, 67 Tex. 624, 4 S. W. 215; Wheeler v. Boyd, 69 Tex. 298, 6 S. W. 614; Weir v. McGee, 25 Tex. Supp. 21. If the trial court erroneously held that the value of the 14-acres deficit, which the jury found to be $1,400, was the measure of his damages, the error, if any, was harmless since the value so found was the same amount that plaintiff paid for the shortage.

[5] There was no error in the order sustaining plaintiff's exception to the plea by the defendant Gillispie that he had offered to return to plaintiff the consideration paid for the entire tract if plaintiff would reconvey the land to him. According to that plea that offer was not made until after the shortage had been discovered. Plaintiff was entitled to the benefit of his bargain. He was entitled to recover the $1,400 for the shortage, and his right thereto could not be defeated by an offer on the part of the defendant to take back the 114 acres at the price for which plaintiff had purchased it. We know of no rule in equity that would thus place it in the power of the defendants to deprive plaintiff of the right to recover the $1,400 which they owed him, and also deprive him of the right to any enhancement in the value of the 114 acres which he did receive.

The evidence was sufficient to support the verdict of the jury in answer to two special issues to the effect that the sale was by the acre, and that the 14 acres deficit in controversy was of the value of $100 per acre.

[6] The judgment rendered in plaintiff's favor was against both defendants, Thomas L. Gillispie and his wife, Elizabeth Gillispie. The defendants addressed a special exception to plaintiff's petition presenting the contention that no facts were alleged to make Mrs. Gillispie personally liable to plaintiff for the judgment sought, and we are of the opinion that the court erred in overruling that exception. It was alleged that the sale was made by Thomas L. Gillispie and his wife, Mrs. Elizabeth Gillispie, and the petition also contained the following:

"As against the defendant Elizabeth Gillispie plaintiff asks personal judgment only to the extent that the testimony may show that she was the owner in her separate right of any of the land deeded to plaintiff by defendants, or only to the extent that the $1,400 overpayment by plaintiff to defendants went to the said defendant Elizabeth Gillispie as her separate property."

But there was no allegation that the property was the separate property of Mrs. Gillispie, and none to show that any of the proceeds of the sale became her separate estate, nor was there any proof of any such facts.

Accordingly the judgment rendered against Mrs. Elizabeth Gillispie is reversed, and judgment is here rendered in her favor.

But for the reasons indicated above all other assignments of error are overruled, and the judgment against Thomas L. Gillispie is affirmed. Costs of appeal taxed against appellee.

On Motion for Rehearing.

[7] In the recent case of Vogt v. Smalley (Com. App.) 210 S. W. 511, by the Commission of Appeals, and adopted by the Supreme Court, it was held that the measure of damages for the shortage in a tract of land which Vogt had sold to Smalley for the agreed purchase price of $15 per acre, and which Smalley had been induced to purchase by the fraudulent misrepresentations of Vogt that the tract contained 624 acres when in fact but 544 were included in the conveyance, was the difference between the price paid by Smalley and the value of what he actually received as of the date of the sale with interest. That decision followed the decision of the same court in the leading case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, which involved a trade in which the parties exchanged properties, and not a conveyance for money paid.

It is well settled that, generally speaking and for most purposes, rules applicable to suits for relief based upon fraud and deceit apply likewise to those predicated upon mutual mistake, and there can be no escape from the conclusion that the rule for measuring

damages resulting from fraud, announced by the Supreme Court in the case noted above, is applicable to the first count in plaintiff's petition in the present suit presenting mutual mistake, and upon which the judgment of the trial court was predicated.

As noted in our original opinion, it appears that the trial court held that the measure of plaintiff's damages was the value of the shortage of 14 acres at the date of plaintiff's purchase, which the jury found to be $1,400. That finding of the jury was challenged by appellants in one assignment of error as having no support in the evidence, in that the county surveyor, Mack Burtleson, who was the only witness who testified on that issue, testified as follows upon cross-examination by defendants, after qualifying as an expert on the values of land in that vicinity:

"In my judgment this particular 14 acres of land outside of the fence, with reference to the value of the whole land in the tract, on August, 1913, was worth less in proportion than the rest of the place, because it did not have any improvements on it. In my opinion the reasonable cash market value in 1913 of the 14 acres, considered alone, supposing a person owned the 114 acres and wanted to buy the 14 acres, was $70 per acre."

But on redirect examination by plaintiff's counsel he testified as follows:

"If this 114 acres of land had contained 14 more acres, that is 128, and this extra 14 acres had been similar to the rest of the land in the field of 114 acres, in my judgment the market value of the whole taken together, would have been $100 per acre."

The trial court by a special issue told the jury to "find the value of that 14 acres at the time of sale"; and in answer thereto the jury found it to be worth $100 per acre. Thus it will be seen that under the issue submitted the jury could have found the value of the land to be $100 per acre if the tract purchased had included the 14 acres shortage, or they could have found its value to be $70 per acre considered alone, and supposing a purchaser owning the 114 acres desired to buy the 14 acres additional. And there was no request for an instruction to the jury to find separate values of the 14 acres as estimated by the witness Burtleson. Under such circumstances, we cannot say, as insisted by appellants, that the finding of the jury that the 14 acres was worth $100 per acre is unsupported by the evidence, since it may be, and it is reasonable to so presume, that the jury intended to place that value on the land in the same manner and for the same reason that witness Burtleson estimated it.

[8] However, the first count in plaintiff's petition, in which a recovery was sought upon allegations of mutual mistake of the parties in supposing the tract sold to contain 128 acres instead of 114 acres, and in trading upon that assumption, contained no allegation of the value of the 14 acres, and therefore the testimony referred to with respect to the value of the shortage was not available to plaintiff for a recovery of such value as the measure of his damages. But, as shown in our original opinion we concluded that as the jury found that the sale was by the acre, and, as the evidence conclusively showed that the agreed purchase price was $100 per acre, that sum would be the measure of plaintiff's damages. But we are now convinced that under the decision of the Supreme Court in Vogt v. Smalley that conclusion was erroneous, and that the proper measure of plaintiff's damages in the present suit is the same as that announced in that case.

One of the special exceptions addressed to plaintiff's petition is paragraph I in defendants' answer, which reads as follows:

"Because said petition fails to allege that the deed from defendants to plaintiff was made or accepted by or through fraud, accident, or mistake, nor that the description contained in the deed does not contain 128 acres of land, nor where the shortage is located or the value thereof."

Appellant's tenth assignment reads as follows:

"Because the court erred in overruling and in not sustaining the defendants' special exception (1) because the allegation in plaintiff's petition, based alone upon mutual mistake as to acreage, nor where the shortage is located, or the value as a whole or per acre of the alleged shortage in the actual possession of Mrs. Ellen Helm; and because the plaintiff's measure of damages, if any he ever had, would be the reasonable cash market value of the 14 acres shortage alleged by him to be in the actual possession of Mrs. Ellen Helm, and which said petition shows to have never been delivered to nor in possession of the plaintiff."

[9] It thus appears that the special exception addressed to plaintiff's petition did present the exception that the value of the 14-acre shortage was not alleged. It further appears that counsel for the defendants, both in the trial court and in this court, was of the opinion that the value of the shortage was the correct measure of plaintiff's damages if he was entitled to recover upon his plea of mutual mistake. But by no assignment of error have appellants presented the contention that the measure of plaintiff's damages should be determined by the rule announced in the decisions noted above, nor was there either pleading or proof in the trial court to warrant that application of that rule. The record shows that the defendants' special exception, copied above, was presented to the trial court and overruled. Hence it cannot be said that the exception was waived. However, since plaintiff's petition contained no allegation of the value of the 14 acres shortage, and since the trial court adopted such value as the measure of damages without any pleading to support it, we feel constrained to grant appellants' motion for rehearing

and to reverse and remand the case for a new trial, notwithstanding the rule for measuring plaintiff's damages as announced in Vogt v. Smalley has not been invoked by appellants as the correct rule.

Rehearing granted, and judgment of the trial court reversed and the cause remanded.